COURT OF APPEALS OF VIRGINIA

Present:  Judges Humphreys, Huff and AtLee
Argued at Leesburg, Virginia

UNPUBLISHED

JOSHUA DEAN DRENTH

                                               MEMORANDUM OPINION[*] BY
v.       Record No. 0388-22-4                  JUDGE GLEN A. HUFF
                                                DECEMBER 20, 2022

ELIZABETH ANNE DRENTH


FROM THE CIRCUIT COURT OF PRINCE WILLIAM COUNTY
James A. Willett, Judge

Dusty Sparrow Reed (Sparrow Reed, PLLC, on briefs), for
appellant.

Amanda M. Kimble (Livesay & Myers, PC, on brief), for appellee.


Following a bench trial in the Prince William County Circuit Court (the "trial court"), the

trial court granted Elizabeth Anne Drenth ("wife") a divorce *a vinculo matrimonii* from Joshua

Dean Drenth ("husband") on the grounds that the parties had been separated for a period of one

year, as required under Code § 20-91.  On appeal, husband claims the trial court erred in finding

that the doctrine of recrimination prevented it from granting him a divorce based on wife's

adultery.  Husband also challenges the trial court's award of spousal support and attorney fees to

wife.  For the following reasons, this Court affirms the trial court as to each of the issues raised.

I.  BACKGROUND

This Court recounts the facts "in the 'light most favorable' to the prevailing party in the

trial court and grants to that party the benefit of 'all reasonable inferences fairly deducible

therefrom.'"  *Marvin v. Marvin*, 51 Va. App. 619, 621 (2008) (quoting *Logan v. Fairfax County*

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

*Dep't of Hum. Dev.*, 13 Va. App. 123, 128 (1991)). "That principle requires us to 'discard the evidence' of the appellant which conflicts, either directly or inferentially, with the evidence presented by the appellee at trial." *Congdon v. Congdon*, 40 Va. App. 255, 258 (2003) (quoting *Wactor v. Commonwealth*, 38 Va. App. 375, 380 (2002)).

Husband and wife married in May 2007. They have four children who were all born during the marriage. Wife has a high school education but never received a post-secondary degree. Husband earned a master's degree as well as certificates for completing additional work-related courses. After the births of their children, husband became the primary source of income for the family while wife stayed at home to care for the children.

Towards the end of December 2019 and beginning of January 2020, wife told husband she wanted a divorce and she stopped sleeping with husband. On February 9, 2020, wife told husband she wanted to separate.[1] At the end of May 2020, wife took a trip by herself to Ohio and paid for a hotel room where she ultimately had sex with a male friend she had met while playing a video game online in 2019.

When wife returned to the marital home on May 29, 2020, husband confronted her about having an affair and stated his intention to separate. Despite continuing to sleep under the same roof, husband and wife did not share the same bed and they kept their lives separate. Husband sold the family home in August 2020, after which the children lived almost exclusively with wife at a new residence.

On February 11, 2021, wife filed a complaint for divorce from husband in the trial court. In that complaint she requested a divorce on two alternate grounds: cruelty under Code

---

[1] Because this Court views the facts in the light most favorable to wife, this Court credits the evidence establishing February 9, 2020, as the date of separation between the two parties. For example, both husband and wife affirmed February 9 as the separation date in their initial pleadings. Regardless, neither party disputes that they had been separated for well over a year by the time of trial in December 2021.

§ 20-91(A)(6) or having lived separate and apart for the one-year statutory period under Code § 20-91(A)(9). Wife also requested an award of spousal support, child support, and attorney fees from husband, as well as primary physical custody of their minor children.

Husband filed an answer to wife's complaint along with a counter-complaint on March 2, 2021. In the counter-complaint, husband asked the court to grant him a divorce on the ground of adultery under Code § 20-91(A)(1) or "in the alternative on the grounds of separation for the statutory period."

The trial court conducted a bench trial on December 21 and December 22, 2021, at which both husband and wife testified, presented witnesses, and offered numerous documents— including financial records—into evidence. Wife admitted to committing adultery in May 2020, after she and husband had separated. She also testified that she had no means of supporting herself and the children without receiving both child support and spousal support from husband.

When wife's attorney asked husband whether he "had sexual relations with anyone other than [wife] since February 9th, 2020," husband invoked his Fifth Amendment right against self-incrimination. Wife's attorney then asked husband a series of questions about his dating activities and the money he spent using online dating services since May 2020. Husband answered each of those questions and confirmed the authenticity of the bank statements showing his payments for such services.

Husband ultimately admitted to spending thousands of dollars on a particular website that allowed him to see videos and photos of women in Eastern Europe, but he stated that he never traveled to Eastern Europe to meet any of those women. He also admitted that he had paid for several other popular dating websites—eHarmony, Match.com, Bumble, Hinge—but denied using those sites to meet women for the purposes of having sex.

- 3 -

After the trial concluded, the court conducted a thorough review of the evidence and made detailed factual findings regarding the grounds for divorce, the allegations of adultery by both parties, the comparative financial situations of both parties, and the parties' relationships with the children. The trial court explicitly acknowledged that those findings were based on its review of the evidence and "determinations as to the weight of the testimony and the credibility of the witnesses."

Regarding the grounds for divorce, the trial court dismissed husband's "fault ground of adultery . . . because both spouses are *in pari delicto* and a fault-based divorce can be asserted only to an innocent spouse." The trial court explicitly found "sufficient evidence that both sides committed adultery" because:

> [w]ith respect to the plaintiff, she made an admission as such. It was corroborated among other things by her trip in late May to Ohio. With respect to the defendant, he asserted his Fifth Amendment privilege which evokes certain inferences that the Court can make, and they were corroborated by his use of various dating websites.

The trial court instead granted a divorce on no-fault grounds—based on its finding that the evidence "adequately established" the parties had lived "separate and apart without interruption and cohabitation for a period in excess of one year"—and awarded wife spousal support. In doing so, the trial court found, "by clear and convincing evidence," "that a denial of support would constitute a manifest injustice based on the degrees of fault and the relative economic circumstances of the parties."

When calculating the amount and duration of wife's spousal support award—$4,762 "per month" indefinitely—the trial court explicitly considered each of the mandatory statutory factors in Code § 20-107.1(E), as well as wife's need and husband's ability to pay. "Having considered all the equities in the case and of course [husband]'s ability to pay and [wife]'s need," the trial court also awarded wife $17,000 in attorney fees.

On February 11, 2022, the trial court entered a final decree of divorce for wife on no-fault grounds. That order contained the same terms orally expressed by the trial court on December 22, 2021. Husband appended objections to the order, challenging the trial court's award of spousal support to wife and its finding that husband had also committed adultery. He did not raise any objection in the trial court regarding wife's award of attorney fees. This appeal followed.

## II. ANALYSIS

On appeal, this Court "review[s] the trial court's statutory interpretations and legal conclusions *de novo*." *Chaney v. Karabaic-Chaney*, 71 Va. App. 431, 434 (2020) (quoting *Navas v. Navas*, 43 Va. App. 484, 487 (2004)). However, this Court is "bound by the trial court's 'findings of historical fact unless "plainly wrong" or without evidence to support them.'" *Park v. Commonwealth*, 74 Va. App. 635, 645 (2022) (quoting *McGee v. Commonwealth*, 25 Va. App. 193, 198 (1997) (*en banc*)).

"In determining whether credible evidence exists, the appellate court does not retry the facts, reweigh the preponderance of the evidence, or make its own determination of the credibility of the witnesses." *Wright v. Wright*, 38 Va. App. 394, 406 (2002) (quoting *Moreno v. Moreno*, 24 Va. App. 190, 195 (1997)). Accordingly, this Court defers to the trial court's "reasonable inferences [drawn] from basic facts to ultimate facts." *Abdullah v. Commonwealth*, 53 Va. App. 750, 755 (2009) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

A.  The Trial Court Did Not Err in Granting a Divorce on Grounds of Separation

In his first two assignments of error, husband alleges that the trial court erred in applying the doctrine of recrimination.[2]  He first argues that, because wife failed to plead the defense of recrimination, the trial court could not *sua sponte* consider it as a reason to deny husband's request for an adultery-based divorce.  Husband also argues that the trial court erred in relying on an adverse inference, without sufficient corroboration, to find that he committed adultery.[3]  The effect of these arguments is to challenge the trial court's granting of a divorce to wife based on a one-year separation period and its denial of husband's request for a divorce on the ground of adultery.

Code § 20-91 lists the grounds upon which a divorce may be granted.  That list includes adultery (a fault-based ground) and a one-year period of separation (a no-fault ground for divorce).  Code § 20-91.  "Except for a divorce granted on the grounds set forth in subdivision A(9) of § 20-91"—the no-fault separation provision—the trial court cannot grant a divorce "on the uncorroborated testimony of the parties or either of them."  Code § 20-99.  As applicable here, both husband and wife offered proof that they had "lived separate and apart without any cohabitation and without interruption for one year" prior to trial on December 21, 2021.[4]  Code § 20-91(A)(9)(a).

---

[2] "The doctrine of recrimination provides that a party is barred from obtaining a [fault-based] divorce if his or her own conduct constituted sufficient grounds for [a fault-based] divorce."  *Venable v. Venable*, 2 Va. App. 178, 184 (1986).

[3] Because this alleged error has no bearing on the trial court's general authority to grant wife a no-fault divorce, this Court reserves its discussion on the propriety of the trial court's adverse inference for the section below addressing spousal support.

[4] Neither party contests that the one-year minimum period of separation had been met by the time of trial.

Assuming without deciding that the trial court erred in finding the doctrine of recrimination prevented granting husband a divorce on grounds of adultery, this Court finds such error ultimately harmless. Neither husband nor wife dispute that the evidence supports the no-fault ground of divorce, which they both pled in the alternative. Thus, the trial court's granting of a divorce on the no-fault grounds is neither plainly wrong nor unsupported by the evidence. *See Fadness v. Fadness*, 52 Va. App. 833, 840 (2008) (affirming divorce granted on no-fault ground of separation where "that ground was supported by the evidence" and appellant did not challenge the sufficiency of that evidence); *Williams v. Williams*, 14 Va. App. 217, 219 (1992) ("If the court 'hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it.'" (quoting *Pommerenke v. Pommerenke*, 7 Va. App. 241, 244 (1988))).

Moreover, even if the trial court had determined that the doctrine of recrimination did not apply—as husband asserts—it "would simply have had two equally legitimate grounds for granting th[e] divorce": wife's adultery or the parties having lived separate and apart for over a year. *Fadness*, 52 Va. App. at 840. This Court has repeatedly held that "[w]here 'dual or multiple grounds for divorce exist, the trial judge can use his sound discretion to select the grounds upon which he will grant the divorce.'" *Id.* (quoting *Konefal v. Konefal*, 18 Va. App. 612, 613-14 (1994)). Because a trial court is not required "'to give precedence to one proven ground of divorce over another,'" the error husband alleges here "was of no real consequence." *Id.* (quoting *Williams*, 14 Va. App. at 219); *see also Gamer v. Gamer*, 16 Va. App. 335, 340 (1993). Therefore, this Court finds that any error in the trial court's application of the doctrine of recrimination was harmless and the entry of the divorce decree on the proven no-fault ground is affirmed.

B.  The Trial Court Did Not Err in Awarding Wife Spousal Support

Separate from his challenge to the grounds of the divorce, husband also assigns error to the trial court's grant of spousal support to wife.  Specifically, husband contends the trial court erred in applying the "manifest injustice" exception in Code § 20-107.1(B) to justify its award to wife because "there was no credible evidence that the trial court compared degrees of fault, nor did the record reflect degrees of fault favorable to the [w]ife."  For the following reasons, this Court disagrees and affirms the trial court's award of spousal support to wife.

In general, "[t]he trial court has 'broad discretion in setting spousal support and its determination will not be disturbed except for a clear abuse of discretion.'"  *Wyatt v. Wyatt*, 70 Va. App. 716, 719 (2019) (quoting *Giraldi v. Giraldi*, 64 Va. App. 676, 681 (2015)).  Code § 20-107.1 governs the procedures by which the trial court can grant spousal support.  In particular, subsection (E) requires the court to "consider the circumstances and factors which contributed to the dissolution of the marriage, specifically including adultery," when determining *whether* to award spousal support.[5]  "Thus, even where a court grants a divorce based on a one-year separation, it must still consider any proven fault-based ground in relation to spousal support," as well as "'all behavior that affected the marital relationship, including any acts or conditions which contributed to the marriage's failure, success, or well-being.'"  *Wyatt*, 70 Va. App. at 719 (quoting *Barnes v. Barnes*, 16 Va. App. 98, 102 (1993)).[6]

---

[5] This section also includes a list of twelve factors the court must consider "[i]n determining the nature, amount and duration of an award pursuant to this section."  Code § 20-107.1(E).  "When the record discloses that the trial court considered all of the statutory factors, the court's ruling will not be disturbed on appeal unless there has been a clear abuse of discretion."  *Gamble v. Gamble*, 14 Va. App. 558, 574 (1992).

[6] The fact that wife did not plead the defense of recrimination does not bar her from presenting evidence of husband's unfaithful behavior because the trial court must consider both parties' behavior when determining whether to award spousal support.  *See* Code § 20-107.1(E); *Barnes*, 16 Va. App. at 102.

At the outset, this Court addresses husband's argument that the trial court committed an error of law in finding he committed adultery based on an adverse inference. He contends the trial court lacked sufficient evidence to make such an inference and that, without corroboration, the inference alone did not prove adultery by clear and convincing evidence. *See Derby v. Derby*, 8 Va. App. 19, 24 (1989) ("To prove adultery, the evidence of extramarital sexual intercourse must be clear and convincing."); *Dodge v. Dodge*, 2 Va. App. 238, 242 (1986) (warning that "[s]trongly suspicious circumstances are inadequate" to prove adultery).

This Court disagrees with husband's argument. In 2020, the General Assembly significantly amended Code § 8.01-223.1 to permit a trial court to draw an adverse inference of adultery from a party's invocation of his or her Fifth Amendment rights in certain types of family law proceedings, including "any civil action for divorce or separate maintenance under Title 20." 2020 Va. Acts ch. 1062.[7] The trial court here exercised this new grant of discretion in finding that husband's invocation of the Fifth Amendment yielded the adverse inference that he had

---

[7] Prior to July 1, 2020, Code § 8.01-223.1 stated only that: "[i]n any civil action, the exercise by a party of any constitutional protection shall not be used against him." The amended version added the following caveat:

> except that in . . . any civil action for divorce or separate
> maintenance under Title 20 filed on or after July 1, 2020, if a party
> or witness refuses to answer a question about conduct described in
> subdivision A (1) of § 20-91 or in § 18.2-365 on the ground that
> the testimony might be self-incriminating, the trier of fact may
> draw an adverse inference from such refusal.

Code § 8.01-223.1; s*ee also* Dale M. Cecka, James R. Cottrell & Craig W. Sampson, *Family Law: Theory, Practice, and Forms* § 9:4 (2022) ("Over the years there have been a number of unsuccessful attempts to repeal Va. Code. Ann. § 18.2-365, the law which makes adultery a Class 4 misdemeanor. If that Code section were repealed, divorce litigants would no longer have 5th Amendment protections against a fault allegation such as adultery. In 2020 the Virginia legislature again turned down an opportunity to repeal the adultery statute. However, it did amend Va. Code Ann. § 8.01-223.1 so as to allow a court to draw an adverse inference whenever a party asserts the 5th amendment in any case for custody, visitation, support, divorce, or separate maintenance.").

engaged in extramarital sexual relations. And the strength of that inference as a basis for the trial court's conclusion that husband committed adultery comes from the circumstantial evidence of husband's extensive involvement on various dating websites.

The context in which a person invokes their Fifth Amendment right is relevant when evaluating the evidentiary effect of an adverse inference of adultery under Code § 8.01-223.1. Here, bank records showed that, after suspecting wife's infidelity, husband spent thousands of dollars to see videos and photos of women on a particular dating website. Husband confirmed that he made those payments but denied that he ever met any of those women in person or had sex with any of the women he met through other online dating websites. Yet, when asked the broader question of whether he had sex with "anyone" other than wife, husband invoked his Fifth Amendment right to remain silent.

In this context, husband's selective testimony creates a strong adverse inference of adultery. If husband had not committed adultery with "anyone," he could have answered that question truthfully without subjecting himself to possible self-incrimination; thus, there would be no reason for him to invoke the Fifth Amendment. Conversely, if husband did have sexual relations with someone other than wife—as the trial court found via the adverse inference—then any answer to that question could produce an incriminatory response: a "yes" admits to adultery, but a "no" commits perjury. Stated simply, it defies logic that husband would invoke the Fifth Amendment in this context unless he did have sex with someone, other than wife, whom he knew or met in a way other than through one of the dating websites. *See Waller v. Commonwealth*, 52 Va. App. 571, 581 (2008) ("The failure of a testifying defendant to contest a factual assertion, when it is within his power and self-interest to do so, corroborates the probative force of the assertion."); *Wells v. Commonwealth*, 32 Va. App. 775, 787 (2000) (holding that

"appellant's failure to deny" the charge while on the stand "was probative of his guilt of the charged offense").

Therefore, assuming the trial court credited husband's testimony, his repeated denial of a sexual relationship with any of the women from the dating websites strengthens the adverse inference arising from his refusal to also deny having sex more generally with "anyone" other than wife. As a result, this Court finds the trial court did not err in relying on an adverse inference that husband committed adultery.

Furthermore, as relevant to husband's challenge regarding the spousal support award, subsection (B) of Code § 20-107.1 prohibits a court from awarding permanent spousal support to an adulterous spouse unless it finds, by clear and convincing evidence, that a denial of such support would constitute a "manifest injustice."[8] *See Giraldi*, 64 Va. App. at 682 ("Adultery is a fault ground for divorce under Code § 20-91(A)(1), and, therefore, a finding that a party has committed adultery generally is an absolute bar to the adulterous party from receiving spousal support under Code § 20-107.1(B)."). This Court has previously recognized that "the legislative impulse behind the manifest injustice exception is to prevent leaving a spouse destitute as a result of an act of adultery." *Mundy v. Mundy*, 66 Va. App. 177, 184 (2016).

In making that determination, a court is limited to consideration of two specific factors: (1) "the respective degrees of fault," and (2) "the relative economic circumstances of the parties." Code § 20-107.1(B); *see also Giraldi*, 64 Va. App. at 683 ("[T]he decision to invoke the manifest injustice exception must be rooted in *both* the 'respective degrees of fault' factor *and* the 'relative economic circumstances' factor." (quoting *Congdon*, 40 Va. App. at 264)). Those two factors, however, "are conjunctive, not disjunctive." *Mundy*, 66 Va. App. at 182.

---

[8] *See also Seemann v. Seemann*, 233 Va. 290, 293 n.1 (1987) (defining "clear and convincing" evidence as "that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established").

Thus, "[n]either requires proof by clear and convincing evidence independently. Rather, it is the confluence of both streams of evidence—of fault and of relative economic circumstances—that must rise, by the clear and convincing standard, to constitute manifest injustice." *Id*.

Contrary to appellant's claims, the trial court complied with the requirements of Code § 20-107.1(B) when it explicitly found, "by clear and convincing evidence," that "a denial of support would constitute a manifest injustice based on the degrees of fault and relative economic circumstances of the parties." The record is replete with the trial court's findings of fact as to both parties' acts of infidelity and their significant economic disparities—the comparison of which plainly supports the trial court's application of the manifest injustice exception. Based on this Court's deferential standard of appellate review, "if 'the record contains credible evidence in support of the findings made by th[e trial] court, we may not retry the facts or substitute our view of the facts for those of the trial court.'" *Congdon*, 40 Va. App. at 266 (quoting *Calvin v. Calvin*, 31 Va. App. 181, 183 (1999)).

Accordingly, this Court finds that the trial court properly compared sufficient evidence as to each party's degree of fault and their relative economic circumstances before awarding wife spousal support pursuant to Code § 20-107.1(B).

C. Husband's Challenge to Wife's Award of Attorney Fees is Barred on Appeal

Husband's final assignment of error challenges the trial court's award of attorney fees to wife. Despite admitting he did not properly preserve this claim for appeal, husband nevertheless asks this Court to invoke the "ends of justice" exception to consider this claim. For the following reasons, this Court declines to apply that exception.

"The purpose of Rule 5A:18 is 'to ensure that the trial court and opposing party are given the opportunity to intelligently address, examine, and resolve issues in the trial court, thus avoiding unnecessary appeals.'" *Friedman v. Smith*, 68 Va. App. 529, 544 (2018) (quoting

- 12 -

*Andrews v. Commonwealth*, 37 Va. App. 479, 493 (2002)). Consequently, "[n]o ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." Rule 5A:18. "'The ends of justice exception is narrow and is to be used sparingly,' and applies only in the extraordinary situation where a miscarriage of justice has occurred." *Conley v. Commonwealth*, 74 Va. App. 658, 682 (2022) (quoting *Holt v. Commonwealth*, 66 Va. App. 199, 209 (2016) (*en banc*)).

"Whether to apply the ends of justice exception involves two questions: '(1) whether there is error as contended by the appellant; and (2) whether the failure to apply the ends of justice provision would result in a grave injustice.'" *Id.* at 682-83 (quoting *Commonwealth v. Bass*, 292 Va. 19, 27 (2016)). The error "must be 'clear, substantial and material.'" *Redman v. Commonwealth*, 25 Va. App. 215, 221 (1997) (quoting *Brown v. Commonwealth*, 8 Va. App. 126, 131 (1989)). "It is never enough for the [appellant] to merely assert a winning argument on the merits" because "such an approach would mean that only losing arguments could be waived and 'every issue would be subject to appellate review regardless of whether the issue was properly preserved.'" *Winslow v. Commonwealth*, 62 Va. App. 539, 546 (2013) (quoting *Alford v. Commonwealth*, 56 Va. App. 706, 710 (2010)).

In asking for this Court to invoke the "ends of justice" exception, husband offers no explanation for why he failed to preserve this claim below. Nor does he satisfy the heavy burden of "affirmatively show[ing] that a miscarriage of justice has occurred, [rather than] that a miscarriage *might* have occurred." *Holt*, 66 Va. App. at 210 (quoting *Redman*, 25 Va. App. at 220-21). This Court reiterates that "an award of attorney[] fees and costs is a matter for the trial court's sound discretion after considering the circumstances and equities of the entire case." *Stark v. Dinarany*, 73 Va. App. 733, 755 (2021) (quoting *Jones v. Gates*, 68 Va. App. 100, 105

- 13 -

(2017)); *see Koons v. Crane*, 72 Va. App. 720, 742 (2021) ("This Court reviews an award of attorney[] fees for an abuse of discretion."). Nothing in the record suggests the trial court abused its discretion in awarding wife attorney fees.

Because husband, therefore, has not met his heavy burden of "establishing a manifest injustice," this Court finds no reason to apply the ends of justice exception. *Conley*, 74 Va. App. at 683 (quoting *Holt*, 66 Va. App. at 210). Accordingly, this Court declines to consider the merits of husband's claim and affirms the trial court's award of attorney fees to wife.

III.  CONCLUSION

For the reasons stated above, this Court is unpersuaded by husband's claims. The trial court's granting of a no-fault divorce and its awards of spousal support and attorney fees to wife are all supported by sufficient evidence. Accordingly, this Court affirms the trial court's final divorce decree.

*Affirmed.*