COURT OF APPEALS OF VIRGINIA

Present: Judges Beales, Callins and Senior Judge Clements
Argued at Richmond, Virginia

UNPUBLISHED

PIERRE LE'SHON PAIGE

                                                     MEMORANDUM OPINION[*] BY
v.       Record No. 0091-23-2               JUDGE JEAN HARRISON CLEMENTS
                                                 JULY 9, 2024

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
Edward A. Robbins, Jr., Judge

Jennifer Marie Patterson (Patterson Law, PLLC, on brief), for
appellant.

Susan Hallie Hovey-Murray, Assistant Attorney General (Jason S.
Miyares, Attorney General, on brief), for appellee.

The trial court convicted Pierre Le'Shon Paige of possession with intent to distribute a

Schedule I or II controlled substance. On appeal, Paige challenges the sufficiency of the

evidence supporting his conviction. In addition, he contends the trial court erred by denying two

pretrial motions. First, he argues that the trial court erroneously denied his motion to suppress

his statements to police made before receiving *Miranda* warnings.[1] Second, he asserts the trial

court erred by denying his motions to exclude and suppress evidence police seized during a

warrantless search of his rental car. For the following reasons, we affirm the trial court's

judgment.

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

BACKGROUND[2]

On August 31, 2020, Chesterfield County Police Officer Jose Talamantes was investigating a crash on a highway when another accident occurred nearby. A sedan rear-ended a black car, which then collided with another vehicle ahead of it. Paige, the driver of the black car, exited the vehicle and stood by the road with the other drivers involved. Officer Talamantes went to each driver and collected their licenses and insurance documents as part of his investigation of the collision.[3]

As Officer Talamantes stood beside the driver's side door of the black car, which was ajar, he could smell the odor of marijuana coming from inside. A woman was seated in the front passenger seat. Paige informed Talamantes that the black car was a "rental" and provided the rental agreement. Paige then retrieved a "Black and Mild" cigarillo from the car, closed the driver's side door, and stood near the other drivers. Moments later, Paige's uncle arrived and spoke to Paige, who explained what had happened.

When Paige returned to the car to speak to the female passenger, Officer Talamantes told Paige not to leave and asked, "You got marijuana in the car?" Paige denied the presence of marijuana in the car. The officer asked Paige to explain the marijuana smell and warned him to "be honest" because he would "get in trouble" if he "lie[d]." Paige suggested the odor came from his cigarillo and reiterated that he did not own the car.

---

[2] On appeal, we review the evidence "in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). Doing so requires us to "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

[3] The officers' interactions with Paige and the other individuals at the scene were recorded by the officers' body-worn cameras. Footage from the cameras was introduced into evidence.

Officer Talamantes opened the driver's side door, preparing to search the car. When Paige objected, Talamantes explained there was probable cause to search the car based solely on the "smell of marijuana." Talamantes ordered the woman to exit the car and questioned her about the odor. She admitted that she had smoked marijuana recently but denied there was any in the car. Paige claimed that he does not "smoke weed." Talamantes searched Paige and did not find any contraband. Then, he returned to the scene of the first accident while another officer, William Claud, arrived and continued questioning Paige and the woman.

Officer Claud asked the woman if there was "weed" in the car, and she replied that there was none. Claud said that typically, "[i]f there's just a little bit" of marijuana, "we'll just take it" without charging anyone. Paige, who was standing nearby, again suggested that Claud had mistaken his cigarillo's odor with marijuana and asked the officer to justify the search. Claud explained that he had probable cause to search the car based solely on the odor of marijuana because marijuana possession was "still illegal," even though it was only a civil offense subject to a fine.[4] He clarified, "I'm not saying you have any in there . . . but if you're up front with us, usually we can cut a deal" and "we'll seize" the marijuana, "no fine or nothing." In response, Paige said, "I'll deal with you. I got a little bag of weed," and reached for a zippered pouch lying on the floorboard on the "[front] passenger side" of the center console, which separated the driver's seat and front passenger seat. When Officer Claud stopped him, Paige pointed at the pouch and stated, "it's . . . folded up . . . [in] a side pouch."

---

[4] Under the law in effect during the investigation, Code § 18.2-250.1(A) made marijuana possession "unlawful," except for a limited circumstance inapplicable here. Code § 18.2-250.1 (Supp. 2020). Violation of that provision was a "civil offense" subject to a "civil penalty of no more than $25." *Id.* In addition, the statute specified that unlawful marijuana possession "shall be charged by summons." Code § 18.2-250.1(B) (Supp. 2020). Before July 1, 2020, unlawful possession of marijuana was a misdemeanor criminal offense punishable by jail or a fine. *See* Code § 18.2-250.1 (Supp. 2019). *See also* 2020 Va. Acts ch. 1286 (changing unlawful marijuana possession from misdemeanor crime to civil offense subject only to a fine).

A third officer arrived and watched Paige and the female passenger while Officer Claud searched the pouch. Claud first opened a zippered compartment and found a digital scale, a plastic bag containing a "white powdery substance," and $1,000 cash. A separate compartment on the side of the pouch contained a small amount of marijuana. The officers then handcuffed Paige and the female passenger and said that they were "not under arrest" but were being "detained" for further investigation.

Officer Claud searched the rest of the car and found another $800 in a compartment in the center console. A loaded firearm was inside the glovebox, and another firearm was "concealed" between the front passenger seat and center console. Subsequent forensic testing established that the "white powdery substance" in the plastic bag was cocaine and weighed "8.99 grams," including the "innermost packaging material."

After Officer Claud searched the car, Officer Talamantes read Paige *Miranda* warnings and Paige acknowledged that he understood his rights and was willing to answer questions. Both officers interviewed Paige about the items found in the car. When Talamantes told Paige that there was suspected "heroin or coke" inside a "little baggie" in the pouch, Paige denied knowledge of the drugs and said that he found the pouch in the car when he collected it from the rental company. Paige admitted that before the accident, he "bought some weed" and put it inside the pouch. He said that before doing so, he picked up the pouch and "shook it" but "didn't look in it." Paige later told Officer Claud he had found the pouch at the car rental store and "just threw it in the trunk" of the rental car without first searching the pouch. Paige acknowledged that he put his marijuana inside the pouch to "hide" it from the police. During the investigation, Talamantes also interviewed the female passenger, who stated that she owned both firearms but denied possession of the pouch or its contents.

Following the interviews, Officer Claud arrested Paige for possession with intent to distribute a Schedule I or II controlled substance and simultaneous possession of a firearm while possessing with intent to distribute a Schedule I or II controlled substance. He also issued Paige a summons for possession of marijuana.

Before trial, Paige moved to suppress his statement to Officer Claud that he had "a little bag of weed" inside the pouch in the car, arguing that the officer had violated his Fifth Amendment privilege against compelled self-incrimination by subjecting him to custodial interrogation without first reading him *Miranda* warnings. Additionally, Paige moved *in limine* to exclude the drugs and other items Claud had seized during the warrantless search of the car, arguing that Code § 18.2-250.1(F), which took effect after the search, required excluding the items because they were the fruit of an unlawful search based "solely on the basis of the odor of marijuana."

At a pretrial hearing, the Commonwealth introduced videos from Officer Talamantes's and Officer Claud's body-worn cameras depicting their investigation. The officers testified that before questioning Paige, they smelled the odor of marijuana coming from his car and believed that circumstance created probable cause to search the vehicle even though marijuana possession had been decriminalized recently. Claud acknowledged that Paige had not received *Miranda* warnings before the officer asked him if there was "weed" in the car, although Paige was not in handcuffs or under arrest at the time. Claud also acknowledged that he minimized the seriousness of marijuana possession hoping that Paige would admit that there was marijuana in the car. When Claud initially searched the car, he did not suspect the vehicle contained any evidence of illegal activity other than marijuana. Talamantes verified that Paige was unrestrained when he initially told Claud that there was marijuana inside the pouch. The officers' body-worn camera videos demonstrated that until they handcuffed Paige after they had searched the car, the officers addressed him in a casual tone

and allowed him to move freely about the scene of the accident, use his cell phone, and interact with his uncle and the female passenger.

Paige argued that although he was not in handcuffs or formally under arrest when he told Officer Claud that he had marijuana inside the pouch, Paige was in "custody" because Officer Talamantes had seized his license and told him not to leave. Additionally, Paige asserted that he made the statement in response to Claud's questions about the presence of marijuana in the car, which constituted an "interrogation" because the questions were reasonably likely to elicit an incriminating response. The trial court found that although Paige's statements were in response to police interrogation, he was "not in custody for purposes of *Miranda*." Accordingly, the trial court denied Paige's motion to suppress his pre-*Miranda* statements.

Paige's motion *in limine* asserted that Code § 18.2-250.1(F) applied retroactively to invalidate the search. The trial court denied the motion, holding that the law did not apply retroactively.

The trial court sua sponte raised the issue of whether the odor of marijuana provided Officer Claud probable cause to search the car under the automobile exception despite the decriminalization of possessing marijuana. The trial court took that issue under advisement pending additional briefing by the parties. At a subsequent hearing, Paige argued that the automobile exception did not apply because it requires probable cause to believe a vehicle contains evidence of "criminal wrongdoing." He asserted that because marijuana "was no longer a criminal offense," the "odor of marijuana must be coupled with other evidence indicating criminal activity" to provide probable cause for a search under the automobile exception. The Commonwealth countered that the automobile exception applied because the officers had probable cause to believe the car contained marijuana, the possession of which was "still unlawful," albeit non-criminal. The trial court found that Officer Claud had probable cause to search the car under the automobile exception based on the

odor of marijuana because possession of that drug was "still . . . an unlawful act." Accordingly, the court denied Paige's motion to suppress.

At trial, Chesterfield Police Detective Hopkins, an expert in drug distribution, opined that 8.99 grams of cocaine had a "street value" between $900 and $1,000. Additionally, he testified that the digital scale, large amounts of currency, and multiple firearms found in the car were indicative of distribution. Hopkins opined that those circumstances, combined with the quantity and value of the cocaine, were inconsistent with personal use.

At the conclusion of the evidence, Paige moved to strike, arguing that the evidence failed to establish that he constructively possessed the cocaine found inside the pouch. Paige conceded that he possessed the marijuana in the pouch but maintained that nothing demonstrated he was aware of the "presence and character" of the cocaine or the other items inside the pouch. Paige also argued that the evidence proved his mere proximity to the cocaine, which was insufficient to prove that he had "handled" it. The trial court denied the motion.

In closing, Paige incorporated the arguments from his motion to strike. Without objection, the trial court reviewed the body-worn camera videos the Commonwealth had introduced at the earlier suppression hearing. Finding that the "totality of the circumstances" demonstrated Paige possessed the cocaine inside the pouch, the trial court convicted him of possession with intent to distribute a Schedule I or II controlled substance.[5]

---

[5] The trial court acquitted Paige of possessing a firearm after being convicted of a violent felony and simultaneously possessing a firearm while possessing with intent to distribute a Schedule I or II controlled substance. The court convicted Paige of possession of marijuana. Paige did not appeal that conviction.

ANALYSIS

I. The evidence was sufficient to support Paige's conviction.

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Id.* (alteration in original) (quoting *Secret v. Commonwealth*, 296 Va. 204, 228 (2018)). "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan*, 72 Va. App. at 521 (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

Paige argues that the evidence failed to prove he constructively possessed the cocaine found inside the pouch in the car. He emphasizes that the pouch was located in an area "closer to and more accessible by the [front] passenger" and that "[t]here was no scientific examination of the . . . [pouch] or the plastic baggie inside to determine whether . . . [his] fingerprints" were present. Paige also denied "ownership" of the pouch or knowledge of the cocaine inside it. Thus, he asserts that the evidence proved only his "proximity" to the pouch containing the cocaine, which is insufficient to prove possession.

To convict for possession of a Schedule I or II controlled substance, the evidence must establish that "the defendant's possession of the drug was knowing and intentional." *Ervin v.*

- 8 -

*Commonwealth*, 57 Va. App. 495, 504 (2011) (en banc) (citing *Burton v. Commonwealth*, 215 Va. 711, 713 (1975)). Possession may be actual or constructive, as well as exclusive or joint. *Smallwood v. Commonwealth*, 278 Va. 625, 629-30 (2009). "Constructive possession of drugs can be shown by 'acts, statements, or conduct of the accused or other facts or circumstances which tend to show that [he] was aware of both the presence and character of the substance and that it was subject to his dominion and control.'" *Bagley v. Commonwealth*, 73 Va. App. 1, 27 (2021) (alteration in original) (quoting *Wilson v. Commonwealth*, 272 Va. 19, 27 (2006)).

We have held that an accused's "mere proximity to an illicit drug" or "ownership or occupancy of the premises where the drug is found" are, themselves, insufficient to prove possession. *Wilson*, 272 Va. at 27. "Nonetheless, these factors may be considered in deciding whether an accused possessed the drug." *Id.* In addition, "the finder of fact may infer from the value of [the] drugs . . . that it is unlikely . . . a transient would leave [them] in a place not under his dominion and control." *Bagley*, 73 Va. App. at 27 (alterations in original) (quoting *Brown v. Commonwealth*, 15 Va. App. 1, 9 (1992) (en banc)); *see also Ervin*, 57 Va. App. at 517 (noting that "drugs are a commodity of significant value, unlikely to be abandoned or carelessly left in an area" (quoting *Ward v. Commonwealth*, 47 Va. App. 733, 753 n.4 (2006))). It is equally well established that a fact finder may infer a criminal defendant's "'consciousness of guilt' from his efforts to avoid detection." *Aley v. Commonwealth*, 75 Va. App. 54, 68 (2022).

The totality of the circumstances—including Paige's statements and evasive conduct, possession and occupancy of the vehicle, proximity to the drugs, and the significant value of the cocaine—demonstrated that Paige knowingly and intentionally possessed the cocaine found inside the pouch. To begin, the record demonstrated that Paige drove the car containing the illicit drugs, which were inside a pouch within his reach. *Wilson*, 272 Va. at 27. True, Paige was not the car's sole occupant, but he was the one who directed Officer Claud to the pouch containing the drugs,

- 9 -

scale, and cash. Paige also stated that he had found the pouch at the car rental store and placed it in the car before their encounter. In addition, Paige admitted that he owned the marijuana and had put it inside the pouch. The totality of that evidence amply demonstrated Paige's dominion and control over the pouch containing the cocaine.

Although Paige denied knowledge of the presence and character of the cocaine and implied that a third party must have hidden it inside the pouch without his knowledge, we note that the pouch contained about $1,000 worth of cocaine and $1,000 cash. Our caselaw acknowledges that such items are "unlikely to be abandoned or carelessly left in an area" outside of the owner's dominion and control. *Ervin*, 57 Va. App. at 517 (quoting *Ward*, 47 Va. App. at 753 n.4). Finally, the trial court was not required to accept Paige's implausible explanation. In evaluating the evidence, "the fact finder may conclude regarding even a non-testifying defendant that his false statements [to police] establish that he has lied to conceal his guilt." *Rams v. Commonwealth*, 70 Va. App. 12, 27 (2019).

The record shows that Paige repeatedly lied to police and provided inconsistent statements concerning the presence of the drugs and explanations for how the pouch came into his possession. For example, Paige initially denied that there was marijuana in the car and repeatedly suggested that the officers smelled only his cigarillo. But later he admitted that the pouch on the floorboard contained marijuana. In addition, he admitted that he put the marijuana inside the pouch to "hide" it from the police. *Aley*, 75 Va. App. at 68. After police discovered the cocaine in the pouch, the evasion continued. Paige initially claimed that the pouch was already in the car when he retrieved it from the rental company, only to later claim that he found the pouch at the car rental store and placed it in the trunk. Considering the shifting explanations and the implausibility that a third party would have abandoned such a large amount of cash and valuable quantity of cocaine, the trial court

was entitled to regard Paige's self-serving denials as "lie[s] to conceal his guilt." *Rams*, 70 Va. App. at 27.

In sum, the totality of the circumstances, including Paige's acts, statements, and conduct, demonstrated that "[he] was aware of both the presence and character" of the cocaine found in the pouch and that the cocaine "was subject to his dominion and control." *Bagley*, 73 Va. App. at 27 (quoting *Wilson*, 272 Va. at 27).

II.  Any error in denying Paige's motion to suppress his statements made to police before receiving *Miranda* warnings was harmless.

"A violation of *Miranda* is subject to review for harmless error." *Timbers v. Commonwealth*, 28 Va. App. 187, 201 (1998). "The proper inquiry for constitutional harmless error is 'whether the [factfinder] *would have* returned the same verdict absent the error.'" *Commonwealth v. White*, 293 Va. 411, 421-22 (2017) (alteration in original) (quoting *Washington v. Recuenco*, 548 U.S. 212, 221 (2006)); *see Chapman v. California*, 386 U.S. 18, 24 (1967) (holding that constitutional error is harmless if the appellate court is "able to declare a belief that it was harmless beyond a reasonable doubt").

Paige contends that "[t]he trial court erred when it denied the Motion to Suppress . . . [his] statements before he was read *Miranda* warnings."[6] Paige argues that the trial court should have concluded that he was "in custody" under *Miranda* when he made the unwarned, incriminating disclosure to Officer Claud that his marijuana was inside the pouch on the floorboard of the rental car.  He asserts that Officers Claud and Talamantes "imposed . . . significant deprivation[s] of his freedom" by seizing his driver's license, telling him that he was not "free to leave," and searching

---

[6] Paige challenges only the admissibility of the statements he made to the officers before receiving *Miranda* warnings.  He does not argue that the evidence Officer Claud seized during the subsequent search of Paige's rental car was fruit of the poisonous tree.  Nor does Paige assert that Officers Claud and Talamantes deliberately subjected him to a two-step interrogation strategy to circumvent *Miranda* or otherwise contest the admissibility of his post-*Miranda* statements.

- 11 -

him for contraband before interrogating him about the presence of marijuana in his car. Paige argues that a reasonable person would not have felt he was at liberty to terminate the interrogation and leave.[7]

We need not decide whether the trial court erred in concluding that Paige was not "in custody" when he initially told Officer Claud that he had marijuana in the pouch because any such error was harmless under the circumstances of this case. In conducting a harmless error analysis, an appellate court must consider "the potential effect of the [erroneously admitted] . . . evidence in light of all the evidence" before the trier of fact. *Haas v. Commonwealth*, 299 Va. 465, 467 (2021) (quoting *Commonwealth v. Proffitt*, 292 Va. 626, 642 (2016)) (considering non-constitutional error); *see Maynard v. Commonwealth*, 11 Va. App. 437, 448 (1990) (en banc) (assuming that a constitutional error had the most damaging effect possible). "[W]hether such an error is harmless in a particular case depends upon a host of factors," including the "importance of the [tainted evidence] in the prosecution's case, whether [that evidence] was cumulative, the presence or absence of evidence corroborating or contradicting the [tainted evidence] on material points" and "the overall strength of the prosecution's case." *Crawford v. Commonwealth*, 281 Va. 84, 101 (2011) (all but first alteration in original) (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986)).

We have held that a statement obtained in violation of *Miranda* and admitted at trial may be harmless if it "is merely 'cumulative' of other, undisputed evidence." *Schwartz v. Schwartz*, 46 Va. App. 145, 160 (2005) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 639 (1993)). An erroneous *Miranda* ruling is also harmless if the other evidence of guilt is "so overwhelming that it

---

[7] Paige also asserts that Officer Claude induced him to confess by falsely minimizing the potential consequences he faced. But Paige does not argue that this tactic rendered his admission involuntary or otherwise violated his due process rights.

renders the error insignificant by comparison such that the error could not have affected the verdict." *Commonwealth v. Kilpatrick*, 301 Va. 214, 217 (2022).

Paige challenges only the admissibility of the statements he made to Officer Claud *before* receiving *Miranda* warnings; he does not challenge his post-*Miranda* statements. But his statements *after* receiving *Miranda* warnings were equally incriminating. The record establishes that after Officer Claud searched the vehicle and seized the pouch containing the drugs, Officer Talamantes handcuffed Paige and read him *Miranda* warnings. After confirming he understood those rights and wished to answer questions, Paige claimed that he found the pouch at the car rental store and placed it inside the rental car. He also claimed that he bought a small amount of marijuana and "hid[]" it inside the pouch to conceal it from the police. Paige stated that he was unaware of the cocaine and other items in the pouch because he did not open it before placing his marijuana in a side pocket.

Paige's unchallenged statements combined with his evasive conduct and the other suspicious circumstances surrounding his arrest proved Paige's guilt "so overwhelming[ly] that it renders the error insignificant by comparison such that the error could not have affected the verdict." *Kilpatrick*, 301 Va. at 217. Thus, any error in admitting the challenged statements was harmless. *Schwartz*, 46 Va. App. at 160.

III. The trial court correctly denied Paige's motion *in limine*.

Effective March 1, 2021, the General Assembly amended Code § 18.2-250.1 by adding subsection F, which stated:

> No law-enforcement officer . . . may lawfully stop, search, or seize any person, place, or thing solely on the basis of the odor of marijuana and no evidence discovered or obtained pursuant to a violation of this subsection . . . shall be admissible in any trial, hearing, or other proceeding.

2020 Va. Acts Spec. Sess. I ch. 51.  Effective July 1, 2021, the General Assembly repealed Code

§ 18.2-250.1, and enacted Code § 4.1-1302(A), which contains substantially similar language but

adds that no search warrant may be issued based solely on the odor of marijuana.  2021 Va. Acts

Spec. Sess. I chs. 550-51, cls. 1, 3, 8.

Paige argues that Code § 4.1-1302(A) applies despite the search in this case occurring

almost a year before the law took effect.  He asserts that the law created a new "rule of evidence"

that is "procedural in nature" within the meaning of Code § 1-239, which provides that

"proceedings . . . held" after a "new act of the General Assembly takes effect" "shall conform, so far

as practicable, to the laws in force at the time of such proceedings."  Paige argues that because Code

§ 4.1-1302(A) is purely procedural and took effect before his trial, it required the trial court to

exclude the evidence Officer Claud seized during a search based "solely" on the odor of marijuana.

Paige acknowledges that in *Street v. Commonwealth*, 75 Va. App. 298, 312 (2022), this

Court rejected the same retroactivity argument.  Nevertheless, Paige invites us to overturn *Street* and

hold that Code § 4.1-1302(A) is purely procedural and, thus, applied "at the time of his trial."[8]

*Street* is binding precedent on us under the inter-panel accord doctrine.  Under that doctrine,

"a decision of a panel of the Court of Appeals becomes a predicate for application of the doctrine of

*stare decisis* until overruled by a decision of the Court of Appeals sitting *en banc* or by a decision of

[the Supreme] Court." *Brown v. Commonwealth*, 68 Va. App. 44, 52 n.1 (2017) (quoting *Johnson*

*v. Commonwealth*, 252 Va. 425, 430 (1996)).  "This principle applies not merely to the literal

---

[8] Paige's argument based on Code § 4.1-1302(A) arguably is not preserved for appellate review because he did not raise it in his motion *in limine*.  Instead, Paige argued that similar language in Code § 18.2-250.1(F) applied retroactively and required excluding the evidence seized from his vehicle.  Paige asks this Court to invoke Rule 5A:18's ends of justice exception to consider his unpreserved argument.  We do not address whether Paige's argument is procedurally defaulted because "resolving the merits of the question presented constitutes the narrowest and best ground" for our resolution of this issue.  *Harvey v. Commonwealth*, 65 Va. App. 280, 285 n.2 (2015) (addressing merits of assignment of error as the "narrowest and best ground" despite the Commonwealth's argument that the error was procedurally defaulted).

holding of the case, but also to its *ratio decidendi*—the essential rationale in the case that determines the judgment." *Hutton v. Commonwealth*, 66 Va. App. 714, 724 n.5 (2016) (quoting *Clinchfield Coal Co. v. Reed*, 40 Va. App. 69, 73-74 (2003)). Thus, we decline Paige's invitation to discard established precedent. That precedent compels our conclusion that Code § 4.1-1302(A) did not apply retroactively to the search in this case. *Street*, 75 Va. App. at 312. Accordingly, Paige's argument fails to demonstrate that the trial court erred.

IV. The trial court properly denied Paige's motion to suppress.

The Fourth Amendment protects individuals from unreasonable searches and seizures. U.S. Const. amend. IV. "[W]arrantless searches are *per se* unreasonable, subject to a few specifically established and well-delineated exceptions." *Parady v. Commonwealth*, 78 Va. App. 18, 28-29 (2023) (alteration in original) (quoting *Megel v. Commonwealth*, 262 Va. 531, 534 (2001)). Officer Claud searched Paige's rental car without a warrant, so in the trial court "the Commonwealth ha[d] the burden of proving the legitimacy of [the] warrantless search and seizure." *Id.* at 29 (alterations in original) (quoting *Reittinger v. Commonwealth*, 260 Va. 232, 235-36 (2000)). On appeal of the trial court's denial of his motion to suppress, however, Paige "bears the burden of establishing that reversible error occurred." *Mason v. Commonwealth*, 291 Va. 362, 367 (2016). We are "bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them." *Knight v. Commonwealth*, 61 Va. App. 297, 305 (2012) (quoting *McGee v. Commonwealth*, 25 Va. App. 193, 198 (1997) (en banc)). But "we 'review[] *de novo* the overarching question of whether a search or seizure violated the Fourth Amendment.'" *Parady*, 78 Va. App. at 29 (alteration in original) (quoting *Williams v. Commonwealth*, 71 Va. App. 462, 475 (2020)).

Paige argues that Officer Claud's warrantless search of the car was invalid for two independent reasons. First, he argues that it was an unlawful search incident to arrest for marijuana possession. Second, Paige asserts that the automobile exception cannot justify the search because

- 15 -

Officer Claud did not have probable cause to believe the car contained "contraband or evidence of a crime." We address the arguments in turn.

A. Paige forfeited his search incident to arrest challenge.

"No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." Rule 5A:18. "Specificity and timeliness undergird the contemporaneous-objection rule [and] animate its highly practical purpose." *Bethea v. Commonwealth*, 297 Va. 730, 743 (2019). "Not just any objection will do. It must be both *specific* and *timely* — so that the trial judge would know the particular point being made in time to do something about it." *Id.* (quoting *Dickerson v. Commonwealth*, 58 Va. App. 351, 356 (2011)). Thus, appellate courts "will not consider an argument that differs from the specific argument presented to the trial court, even if it relates to the same general issue." *Edwards v. Commonwealth*, 41 Va. App. 752, 761 (2003) (en banc) (citing *Floyd v. Commonwealth*, 219 Va. 575, 584 (1978)).

Paige did not argue to the trial court that Officer Claud conducted an unlawful search of the rental car incident to Paige's arrest. Thus, that specific argument is forfeited. Rule 5A:18. Nonetheless, Paige asks this Court to invoke Rule 5A:18's ends of justice exception to consider his unpreserved argument.

"'The ends of justice exception is narrow and is to be used sparingly'"; it "applies only in the extraordinary situation where a miscarriage of justice has occurred." *Conley v. Commonwealth*, 74 Va. App. 658, 682 (2022) (quoting *Holt v. Commonwealth*, 66 Va. App. 199, 209 (2016) (en banc)). "[T]o avail oneself of the exception, [the appellant] must affirmatively show that a miscarriage of justice has occurred, not that a miscarriage *might* have occurred." *Id.* (second alteration in original) (quoting *Holt*, 66 Va. App. at 210). We discern no miscarriage of

justice here because the record does not demonstrate that any evidence was collected during a search incident to Paige's arrest.

B. No police misconduct triggered the exclusionary rule.

The exclusionary rule is "not 'a personal constitutional right,'" but a "judicially created remedy" "whose 'sole purpose . . . is to deter future Fourth Amendment violations.'" *Collins v. Commonwealth*, 297 Va. 207, 214 (2019) (alteration in original) (first quoting *Stone v. Powell*, 428 U.S. 465, 486 (1976); and then quoting *Davis v. United States*, 564 U.S. 229, 236-37 (2011)). Thus, "[w]here suppression fails to yield 'appreciable deterrence,' exclusion is 'clearly unwarranted.'" *Id.* (quoting *Davis*, 564 U.S. at 237).

Paige argues that the odor of marijuana emanating from his rental car did not create probable cause to believe it contained "contraband or evidence of a crime" under the automobile exception because, under the law in effect when the search occurred, marijuana possession was not a criminal offense. Rather, marijuana possession, though "unlawful,"[9] was only a "civil offense" subject to a "civil penalty of no more than $25." Code § 18.2-250.1(A) (Supp. 2020). Paige implies that "contraband" in the context of the automobile exception includes only items the possession of which is a criminal offense. Conversely, the Commonwealth argues that "contraband" for purposes of the automobile exception includes anything *unlawfully* possessed, irrespective of the nature of the offense.

We need not decide that issue because Officer Claud did not engage in culpable misconduct. To trigger the exclusionary rule, "police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the

---

[9] Mere possession was not unlawful if "the substance was obtained directly from, or pursuant to, a valid prescription or order of a practitioner while acting in the course of his professional practice" or if "otherwise authorized by the Drug Control Act (§ 54.1-3400 et seq.)." Code § 18.2-250.1(A) (Supp. 2020).

justice system." *Collins*, 297 Va. at 215 (quoting *Herring v. United States*, 555 U.S. 135, 144 (2009)).  To determine whether an officer's conduct was "sufficiently deliberate," an appellate court looks to two considerations:  "What was the state of the law governing [the officer's] search at the time that he conducted it, and what factual circumstances provided either clarity or ambiguity to [the officer] in his presumed reliance upon that law?"  *Parady*, 78 Va. App. at 38 (alterations in original) (quoting *Collins*, 297 Va. at 219).  "In examining 'the state of the law at the time of the search,' we ask whether a "'reasonably well trained officer would have known that the search was illegal" in light of "all of the circumstances.""'  *Id.* (quoting *Collins*, 297 Va. at 219-20).  We focus our analysis "on the 'flagrancy of the police misconduct at issue,'" and we "employ the 'last resort' remedy of exclusion only when necessary 'to deter deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence.'"  *Collins*, 297 Va. at 219 (first quoting *Davis*, 564 U.S. at 238; and then quoting *Herring*, 555 U.S. at 140, 144).

Assuming without deciding that Officer Claud's search of Paige's rental car was constitutionally infirm, the officer's conduct does not justify applying the exclusionary rule.  When the search in this case occurred, neither controlling precedent nor the relevant statutes provided unambiguous guidance concerning whether an unlawfully but not criminally possessed substance is "contraband" under the automobile exception to the Fourth Amendment's warrant requirement.  *See Parady*, 78 Va. App. at 40 (holding officer's "mistaken assessment of unambiguous case law" was sufficiently "deliberate conduct" to justify applying the exclusionary rule).  Indeed, the search occurred less than two months after the General Assembly converted marijuana possession from a misdemeanor to a civil offense.  *See* Va. Acts 2020, ch. 1286.  Moreover, before the change in law, it was well established that the odor of marijuana localized to a particular area provided probable cause to believe that area contained the drug.  *Bunch v. Commonwealth*, 51 Va. App. 491, 497 (2008).  But a mere two months after the statutory change, there was no binding caselaw addressing

whether the automobile exception applies only if there is probable cause to believe the vehicle contains evidence or contraband connected to criminal conduct. Given those circumstances, a "reasonably well trained officer would [not] have known that the search was illegal." *Parady*, 78 Va. App. at 38 (quoting *Collins*, 297 Va. at 219-20).

Based on the record before us, we cannot conclude that the officers in this case engaged in culpable conduct that would trigger the exclusionary rule. Accordingly, we affirm the trial court's judgment.

## CONCLUSION

For the foregoing reasons, the circuit court's judgment is affirmed.

*Affirmed.*